O’MALLEY, Circuit Judge,
dissenting.
I agree with the majority’s interpretation of 19 C.F.R. § 24.24(e)(4)(iv)(C), the governing regulation. I disagree, however, that application of that regulation to the record justifies summary disposition of Ford’s refund claims. Because I would remand this action to the Court of International Trade for further fact finding with respect to both the pre- and post-July 1, 1990, claims, I respectfully dissent.
I
As the party defending a favorable summary judgment ruling, the government bears the burden of demonstrating the absence of any genuine issues of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Ford has proffered evidence sufficient to demonstrate that genuine issues of material fact exist with respect to the pre-July 1, 1990, claims. Specifically, in conjunction with the FOIA report, the declarations submitted by Ford suffice to raise a genuine issue of material fact regarding the accuracy of its refund claims.
First is the declaration of Pamela Stec, who worked in Ford’s customs operations group, the group charged with ensuring that Ford complied with HMT reporting and payment requirements. Stec personally signed and submitted at least one quarterly HMT report to Customs during the pre-July 1, 1990, period. In that report, which is attached to her declaration, Stec signed a certification indicating that the information in the report related to cargo loaded for export. While Stec was not personally responsible for all of Ford’s quarterly HMT filings and payments, she claims to have personal knowledge of, and experience with, Ford’s customs compliance practices. Based on that knowledge and experience, and her review of many of Ford’s HMT reports, Stec expresses confidence that Ford’s HMT quarterly filings filed between 1987 and 1990 would have contained the same information and detail as the one she signed. Stec, in other words, expresses confidence that Ford’s HMT quarterly filings are properly classified as export payments.
A declaration submitted by Paulsen Vandevert lends further support for this claim. An international trade attorney at Ford, Vandevert is familiar with Ford’s customs practices. Vandevert reviewed several of Ford’s quarterly HMT reports and found that each one clearly identified the classification of the HMT payment. Vandevert, moreover, submitted a certification to Customs, in support of Ford’s refund claim, in which he claimed that all of Ford’s HMT payments identified as Code 502—the code for exports—were *1062 properly classified as export payments. While Vandevert acknowledges that the Customs database contains errors, he believes that Ford’s HMT reports are accurate, and that the accuracy of Ford’s reports demonstrates that Ford’s payments were properly classified as export payments. In other words, he asserts that, to the extent the Customs database reflects payments by Ford, the government can have confidence that those entries were not erroneous.
Because we are considering Ford’s proffered declarations at the summary judgment stage, we must view them in the light most favorable to Ford. Adickes, 398 U.S. at 157, 90 S.Ct. 1598 (noting that a court must view the evidence in the light most favorable to the party opposing summary judgment in determining whether a genuine issue of material fact exists). Viewed in that posture, Stec’s and Vandevert’s declarations present credible testimony from two Ford employees who have personal knowledge of Ford’s HMT reporting practices and who have reviewed many of Ford’s quarterly HMT reports. Both employees support Ford’s claim that its HMT payments were accurately classified as export payments. A reasonable fact finder could conclude that, given this testimony, it is more likely than not that Ford’s HMT payments were properly classified as export payments, both by Ford and Customs, notwithstanding any other errors in the Customs database.
The majority dismisses the significance of the Stec and Vandevert declarations because, in its view, the declarations do not rule out all possibility that Ford made errors in its submissions; that certain payments were sent to the wrong lock box; or that bank personnel made errors in recording the payments in the database. Majority Op. at 1059-60. To survive the government’s summary judgment motion, however, Ford is not required to resolve all possible doubts regarding inaccuracies in the Customs HMT database. Ford need only demonstrate that a reasonable fact finder could conclude that Ford’s own documentary proof accurately shows that its payments were remitted for exports. See 19 C.F.R. § 24.24(e)(4)(iv)(C) (requiring the submission of “supporting documentation” to “establish[ ] entitlement to a refund”). A reasonable fact finder could conclude that Ford’s proof meets that standard.
II
Ford’s evidence also raises a genuine issue of material fact with respect to the post-July 1, 1990, claims. The principal evidence on which Ford relies to survive summary judgment on those claims is copies of its EVMSSs. The majority believes that the EVMSSs are insufficient to preclude summary judgment because “[t]he presence of these documents in Ford’s files shows only that the documents appeared in Ford’s files,” not that the EVMSSs were submitted to the bank. Majority Op. at 1060. That inference is not the most favorable one to Ford, however. The most favorable inference is that Ford submitted the EVMSSs with its HMT payments to the bank. Many of the EVMSSs are dated and signed under “penalties provided by law,” and they identify Customs and a post office box address in the “send to” field. A reasonable fact finder could conclude that Ford would not have gone to the trouble of preparing the EVMSSs, having a representative sign them under penalty, and inserting what appears to be Customs’s bank’s address unless Ford actually remitted the documented payments to the bank. A reasonable fact finder, therefore, could conclude that the EVMSSs support Ford’s claimed entitlement to a refund on its post-July 1,1990, claims.
*1063 III
I do not suggest that Ford’s evidence conclusively establishes its right to a refund. The trial court would be entitled to find at trial that Ford’s evidence does not support its claim because, for example, Ford’s witnesses are not credible on the stand, or other evidence proves Ford’s quarterly HMT reports and EVMSSs unreliable. Ford, however, is not required to conclusively establish its case at the summary judgment stage. “[T]he issue of material fact required by [Federal Rule of Civil Procedure] 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties’ differing versions of the truth at trial.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting First Nat’l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).
Ford has proffered sufficient evidence to withstand summary judgment. It is entitled to have its witnesses heard and its evidence considered at trial before a decision regarding its right to a refund is reached. “[A]t the summary judgment stage the judge’s function is not himself to weigh the evidence but to determine whether there is a genuine issue for trial.” Id. By affirming the trial court’s grant of summary judgment, the majority prematurely decides this case on its merits.